THE STATE v. NORVILLE W. BRICKEY, Appellant.—152 S. W. (2d) 1055.

Division Two, June 10, 1941.

Rehearing Denied, July 25, 1941.

R. D. Rodgers, Hulen & Sappington and Cullen Coil for appellant; Williams, Nelson & English and R. F. O'Bryen of counsel.

*Roy McKittrick*, Attorney General, and *Robert L. Hyder*, Assistant Attorney General, for respondent.

BOHLING, C.—Norville W. Brickey was convicted of obtaining on April 14, 1938, a $2953.19 warrant from the School District of Festus, Missouri, also known as School District No. 48 of Jefferson County, Missouri, by means of false pretenses and was sentenced to two years' imprisonment in conformity with the verdict. He appeals, attacking the sufficiency of the evidence, the admissibility of

certain evidence, the State's main instruction, and certain arguments on behalf of the State.

█ The charge was to the effect defendant falsely represented that $2953.19 had become due and payable on the bonded indebtedness, principal and interest, of said School District; and that he had paid the same and was entitled to reimbursement therefor. A warrant was authorized, payable to defendant, in said amount. The School District had issued bonds in the years 1910, 1915, 1916, 1922, 1924 and 1933. Defendant's contention that a case was not made, on the ground the State failed to establish that the bonds of the 1910, 1915, 1916, 1922 and possibly a portion of the 1924 issues had been paid and discharged and, therefore, they might have been due and payable, is not well taken.

The Board of Education did not keep a bond register. The clerk of the Board testified that at the time of the trial the first 137 pages of the minute book of the Board, although therein prior to 1936, were missing and that the record of the minutes of said Board now went back only to April 3, 1935. This necessitates extending the statement.

Defendant had been president of said Board of Education since 1922. He also was president of the Citizens Bank of Festus and had held other official positions. He had the confidence of other members of said Board and transacted the District's business with outside parties in respect to its bonded indebtedness to the exclusion of the other Board members. In 1924 the School District issued $50,000 principal amount of bonds. Stifel, Nicolaus and Company, investment bankers, of St. Louis, Missouri, purchased the entire issue and sold the bonds to their clients. In 1933 the School District of Festus issued $35,000, principal amount, in bonds for the purpose of refunding certain of the 1924 bonds. John J. Niemoeller testified, that he was Secretary-Treasurer of Stifel, Nicolaus and Company and was familiar with the bond issues of the Festus School District; that defendant took up with his firm the matter of issuing said District's refunding bonds of 1933; and that there were $35,000, principal amount, of the 1924 bonds outstanding. A copy of the minutes of said Board of Education, certified by the clerk thereof in his official capacity and filed in the office of the State Auditor in connection with said $35,000 bond issue, discloses that said minutes, bearing date of March 29, 1933, were signed by defendant as president of said Board of Education; that the resolution authorizing the issuance of said $35,000 in bonds recited that bonds Nos. 1 to 18, inclusive, aggregating $15,000, of the 1924 issue had been paid and that bonds Nos. 19 to 60, inclusive, aggregating $35,000, were outstanding and unpaid; and that said resolution was unanimously adopted by the members, including defendant, of said Board. Mr. Niemoeller further testified that defendant delivered to Stifel, Nicolaus and Company the $35,000 of new bonds; that said Company effected the exchange of $25,000, principal

amount, of the 1924 issue for a like amount of the 1933 refunding bonds, and said $25,000 ·of said 1924 bonds were canceled; that said Company could not prevail upon the then owner of the remaining $10,000, principal amount, of said 1924 bonds to exchange the same, and that on December 8, 1933, said Company redelivered $10,000, principal amount, of the 1933 refunding bonds to the School District, taking its receipt, executed by defendant as president of said Board, therefor. Thereafter, there is no need to detail the testimony, on June 27 and 28, 1935, said Company and defendant, acting on behalf of the School District, effected the exchange of the aforementioned $10,000 of the 1924 bonds for a like amount of 1933 refunding bonds, defendant delivering to said Company the certificate of H. E. Vaughn, as Treasurer of said School Board, certifying that said bonds had been canceled. These bonds, for $500 and $1000, principal amounts, were Nos. 32, 33, 35, 36, 41-47, both inclusive, of said 1924 issue.

Mr. Vaughn testified that defendant presented the certificate to him for signature; that he asked for the bonds; that defendant said: "We have them to destroy;" and that, having confidence in defendant, he signed the certificate but did not personally cancel the bonds.

Stifel, Nicolaus and Company was paying agent for the 1933 bond issue; i. e., received the money to pay the principal and interest as they matured. Under date of April 8, 1938, said Company forwarded to the School District, in care of defendant, a statement showing principal of $1000 and interest of $775 on the 1933 refunding bonds due on April 15, 1938, plus a paying charge of $3.19—total $1778.19. At a meeting of the Board of Education on April 13, 1938, defendant informed the Board he had been in St. Louis and had given his personal check in the amount of $2950, plus a paying charge (the amount of which he did not then recall), to take care of the principal and interest due on the School District's bonds. The Board authorized a warrant therefor, the paying charge to be added. The next day defendant presented his statement to the clerk of the Board. It read: Principal $2000; Interest $950; Paying fee $3.19; Total $2953.19. The clerk issued a warrant to defendant for the $2953.19 on April 14, 1938. Defendant admitted he received the $2953.19 called for in the warrant.

Defendant, by check dated April 15, 1938, paid the $1778.19 due under Stifel, Nicolaus and Company's statement, which, according to the record, covered the full amount then due on the 1933 issue. Defendant's cross-examination of Chas. E. Porter, cashier of the Citizens Bank, attempted to account for the balance of the $2953.19 as follows: On March 26, 1938, defendant paid the bank $5000 and $111.81 interest for $5000 of the School District's said bonds, and received a $1000 bond which was at the bank, the others being in St. Louis. By check dated April 15, 1938, defendant paid $50 interest on two $1000 School District's bonds held by one Henry Meyers. The interest

on $5000 at five per cent from March 26, 1938, to April 15, 1938, was taken at $13.19. The claimed credits total $2,953.19. But other portions of the record established that said $7000 of bonds held by the Citizens Bank and Henry Meyers were of the 1924 issue, the refunding of which had been consummated by the issuance of the last of the 1933 bonds on June 27 and 28, 1935; and, as we read the record, the bond delivered to defendant by the Bank on March 26, 1938, was bond No. 36 of the 1924 issue, for which defendant had given his personal receipt and was supposed to have had canceled.

Thereafter, Stifel, Nicolaus and Company was advised that some of the 1924 bonds had not been canceled. They immediately got in touch with defendant and defendant brought the $10,000, principal amount, of the 1924 bonds involved in the redemption transactions of June 27 and 28, 1935, and supposed to have been then canceled to said Company's office, where said bonds were actually canceled. This occurred September 17, 1938, subsequent to the issuance of the $2953.19 warrant.

Defendant informed Edwin L. Lopata, a certified public accountant who audited the records of the School District, that said $2953.19 received from the School District paid $1778.19 principal and interest on the 1933 refunding bond issue, retired a $1000 bond of the 1924 issue held by the Citizens Bank and paid $175 interest for six months at five per cent on $7000 bonds. This witness also testified to statements by defendant that the $7000 of bonds were held by the Citizens Bank and were bonds of the 1924 issue.

The material facts of the State's case stand unquestioned of record, involve only the refunded bonds of the 1924 and the bonds of the 1933 issues and amply support the verdict.

 Any variance between the charge that defendant represented he had paid certain bonds and interest of the School District in the amount of $2953.19 and proof that he represented he had given his personal check for $2950, plus a paying charge—an amount not then recalled but ascertained to be $3.19, to take care of the principal and interest due on the School District's bonds was not fatal to the prosecution. [See Sec. 3951, R. S. 1939, Mo. Stat. Ann., p. 3158, sec. 3562.] Defendant did not object to the proof. [State v. Long, 278 Mo. 379, 386, 213 S. W. 436, 438[4]; State v. Foley, 247 Mo. 607, 634, 153 S. W. 1010, 1018[8].]

 Edwin L. Lopata, a certified public accountant, was permitted to testify that from an assembling and examination of the available records of the School District, such as the cash book, general ledger, warrants, checks, bank accounts, certified transcript of the records of said School District filed with the State Auditor, et cetera, that there had been paid out between 1922 and June 30, 1938, on account of bonds and interest and notes and interest $146,567.95; that the amount which became due and payable during said period on account

of the same was $113,263.38; and that the excess of payments was $33,304.57. In proper circumstances qualified witnesses may state the results of an audit made. [State v. Howell, 317 Mo. 330, 335[II], 296 S. W. 370, 371[5], and cases cited.] Defendant's brief informs us that the real objection to the testimony and the real reason it was inadmissible was that it did not cover the complete period from 1910 to 1938 but only from 1922 to June, 1938. Certified transcripts of proceedings by the School District filed in the State Auditor's office were offered by defendant. They show the authorization of bonds in 1910, 1915, 1916, and 1922 and disclose the amount of the issue, the then aggregate indebtedness, including said bond issue, of the School District and the maturity date of the last bond of the issue, respectively, as follows: The 1910 issue: $8000; $11,900; July 10, 1924. The 1915 issue: $2500; $10,000; April 23, 1925. The 1916 issue: $1800; $7800; July 21, 1925. The 1922 issue: $20,000; $21,750; April 20, 1932. The exhibits covering the 1924 and 1933 bond issues, offered by the State, disclosed the following facts: That the 1924 issue was for $50,000; that the then indebtedness, including said $50,000, aggregated $66,000; and that the last bond of said issue matured April 15, 1944. That the 1933 issue was for $35,000; that the same was authorized subsequent to the last maturity date of the bonds authorized in 1910, 1915, 1916 and 1922; that at said time there were outstanding bonds of the 1924 issue, aggregating $35,000, principal amount; that said 1933 issue was for the purpose of refunding said outstanding bonds of the 1924 issue; and that $1000, principal amounts, of said 1933 issue matured on April 15, 1934, and April 15th of each subsequent year up to and including April 15, 1952, and $16,000, principal amount, matured on April 15, 1953, with interest thereon payable semi-annually on April 15 and October 15 of each year. The accuracy of the records assembled and examined are not questioned and they afforded data upon which to base a conclusion as to the amount of bonds and interest maturing and paid between 1922 and June 30, 1938, and also that when the 1933 refunding bonds were issued, all bonds other than $35,000 of the 1924 issue had been paid. Between April 16, 1938, and June 30, 1938, no bond or interest of the 1933 issue became due. The testimony had probative value on the truth or falsity of defendant's statement that he had paid $2953.19 principal, interest and paying charges due in April, 1938. Its weight was for the jury.

 The State's testimony permitted of a finding that defendant handled all transactions of the School District in respect to its bonded indebtedness and interest with outside parties, including payments; and that the members of the Board of Education accepted his statements without question and acted accordingly. The testimony might bear on intent.

█ Defendant alleges reversible error on the ground the State's main instruction failed to require a finding that the other five members of the Board of Education believed, relied upon and were deceived by defendant's representations, stating the instruction assumed such facts. The instruction, after requiring a finding that defendant, with intent to cheat and defraud, made certain false representations to said Board of Education, read: "and if you further believe beyond a reasonable doubt that the said George Koester, Sr., E. W. Rose, George W. Bennett, H. L. McCormick, and Louis M. Bequette, believing the said false pretenses and representations so made by the said Norville W. Brickey to be true, if you find the said Norville W. Brickey made said representations and that they were false, and that relying upon and being deceived thereby, were by reason thereof induced to and did, acting as members of the Board of Education of said School District, order and cause to be drawn and delivered to the said Norville W. Brickey a warrant" et cetera. Defendant stresses such cases as State v. Jones, 306 Mo. 437, 444(1), 450(V), 268 S. W. 83, 85(1), 87[10]; State v. Ferguson, 221 Mo. 524, 529, 120 S. W. 753, 754; State v. Socwell, 318 Mo. 742, 748(II), 300 S. W. 680, 682(4, 6). The existence of the facts assumed by the instructions in the Jones and Ferguson cases were controverted and in the Socwell case the testimony tending to establish the constitutive element of the offense omitted from the instruction was considered meager and of doubtful probative value.

The State contends, first, the instruction is not subject to the criticism levied against it by defendant, stating the record in State v. Clice (Mo.), 252 S. W. 465, 467[5], discloses that the instruction therein approved was similarly worded. The same may be said of phrases to like effect in an instruction held to assume certain other facts in State v. Steele, 226 Mo. 583, 595, 596, 126 S. W. 406, 410, also cited by defendant. Neither case rules the precise issue presented by defendant. Defendant's criticisms might be obviated by the use of the past tense of the verbs instead of the participles, but we need not rule this phase of the issue; because:

Conceding it to be error for an instruction to assume a material fact issue on which there is no evidence or the evidence is contradictory, or permits of different inferences, the State also asserts it is not reversible error to assume the existence █ of facts which have been clearly proved and stand undisputed and that such is the instant situation. [State v. Reynolds, 345 Mo. 79, 86[6], 131 S. W. (2d) 552, 556[9, 10]; State v. Moore (Mo.), 80 S. W. (2d) 128, 131[7]; 23 C. J. S., p. 704, n. 41.] The testimony of individual members of the Board of Education established their belief in, reliance upon and deception by defendant's representations. There is no evidence contra. The defense interposed of record was that defendant paid $2953.19 of principal and interest of the School District's bonded indebtedness

and paying charges thereon. This was for the purpose of negativing the falsity of defendant's representations. It presented no, but tended to remove all, controversy as to any Board members' belief in, reliance upon or deception arising out of said representations, and narrowed the controverted issues to defendant's knowledge, intent and acts.

The error, if any, was not reversible under the instant record. Defendant also says the reference to $1775 in the italicized portion (infra) of said instruction was unsupported by the evidence and constituted an improper comment on the evidence: ". . . and if you further find and believe from the evidence beyond a reasonable doubt that at the time bonds and interest constituting a part of the bonded indebtedness of said School District in the amount of $2950.00 had not become due and payable, *but only the amount of $1775.00, principal and interest, had become due and payable,* and that,'' briefly, defendant had not paid and was not entitled to be reimbursed in the sum of $2950 for principal and interest indebtedness paid on behalf of said School District, et cetera.

The $1775, principal and interest, of the District's bonded indebtedness which became due April 15, 1938, was not due when defendant made the representations (April 13) or obtained the warrant (April 14). The questioned clause was not supported by the evidence; and we find no fault with the rule that instructions are to be based upon and justified by the evidence. [State v. Farmer, 111 S. W. (2d) 76, 79[3, 4, 6].] However, the charge against defendant was that he obtained the $2953.19 (the figure includes the $3.19 paying charge) warrant by means of false representations, and not that he obtained $1175 (the difference between $2953.19 and $1778.19—the amount of the District's bonded principal and interest paid by defendant on April 15, 1938) of the funds of the District. If defendant's representations were false with respect to the $1175 involved in the $2953.19 warrant, their falsity permeated the whole of said representations, tainted said $2953.19 warrant with defendant's fraud, vitiated said warrant and supported the verdict. The italicized portion of the instruction did not harm defendant; but, through it, the court indicated its sanction of a finding favorable to defendant, based upon his payment of the $1778.19 on April 15, 1938, to which he was technically not entitled. The situation presents no issue of variance. The instruction, the quoted portion, did not relieve the jury from but required a finding that $2950 had not become due and payable on the School District's bonded indebtedness. This is not a case, as are defendant's cases, wherein unauthorized statements in instructions were considered prejudicial to defendant. [State v. Farmer, supra.] If the clause singled out, emphasized or gave undue prominence to any evidence, it was evidence favorable to defendant and he may not successfully complain thereof. Consult, although not precisely in point, State v. Stewart, 278 Mo. 177, 212 S. W. 853,

856[9-11]; State v. Berkowitz, 325 Mo. 519, 530, 29 S. W. (2d) 150, 155[15] State v. Vanarsdall (Mo.), 273 Mo. 733, 735[2].

The motion for new trial alleged that instruction No. 1 was ''so long, involved and contradictory that it amounted to a misdirection to the jury'' but did not point out wherein it was contradictory, too long or too involved and misdirected the jury. The State's position that the said assignment in the motion for new trial did not preserve anything for appellate review is well taken. [State v. Kelly (Mo.), 107 S. W. (2d) 19, 21[7]; State v. Frazier, 339 Mo. 966, 977[7], 98 S. W. (2d) 707, 714[11].] We find the instruction not objectionable in the respects mentioned.

During the closing argument, the State's attorney stated, ''. . . when a man comes before a jury charged with a criminal offense, and the only evidence he offers and the only defense set up by his attorneys is that he bore a good reputation in his community. . . .'' The objection of defendant's attorney (''We object to that as a wholly improper and prejudicial argument'') was overruled. The State's attorney continued: ''. . . is his good reputation and his high standing in the community, that very statement of itself, that very conduct of itself, is what we call one of confession and avoidance.'' The objection then interposed (''We object to that as being an improper and highly prejudicial argument on the part of the State'') was also overruled. Defendant makes the point that the argument referred to his failure to testify. We have held that objections to arguments should specify the objectionable features and the grounds of the objection. The following objections have been considered insufficient to preserve the point presented by defendant: ''We object to counsel turning to the defendant and saying, 'You have not seen fit to deny anything in connection with the gun' as improper argument.'' [State v. Allison (Mo.), 300 S. W. 1069, 1071[7].] ''We object to that statement.'' [State v. Cooper (Mo.), 271 S. W. 471, 475[8].] ''We object to that as improper.'' [State v. McKeever, 339 Mo. 1066, 1085[13], 101 S. W. (2d) 22, 32[29].] An argument may be ''highly prejudicial,'' i. e., hurtful, damaging or detrimental, to a defendant and not be improper. The statement referred to the case made by the evidence for the purpose of drawing deductions therefrom, and was within the scope of legitimate argument in a criminal case. [State v. Preston, 77 Mo. 294, 296; State v. Pierce, 320 Mo. 209, 218, 7 S. W. (2d) 269, 272[6]; State v. Fields, 234 Mo. 615, 625(IV), 138 S. W. 518, 520[8]; State v. Janes, 318 Mo. 525, 530, 1 S. W. (2d) 137, 138[3]; State v. McKeever, 339 Mo. 1066, 1085[13], 101 S. W. (2d) 22, 32[31-33]; State v. Reynolds, 345 Mo. 79, 87[8], 131 S. W. (2d) 552, 557[12].]

In his printed argument defendant also questions certain argument to the effect that all citizens, high and low, should be subject to like punishments for like law violations. (This, as well as another

point hereinbefore mentioned, is really not properly preserved, and perhaps the State did not brief them for that reason.) The argument was within the legitimate range of defendant's evidence as to his high standing and good reputation. [State v. McBride (Mo.), 231 S. W. 592, 594[4]; State v. Swain, 239 Mo. 723, 730 (VI), 144 S. W. 427, 428[7]; State v. Mallon, 75 Mo. 355, 358; 23 C. J. S., p. 583, sec. 1107.] The jury assessed the minimum punishment.

A careful study of the record calls for the affirmance of the judgment. It is so ordered. *Cooley* and *Westhues, CC.*, concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.